In the Matter of the Application of KENNETH F. SIMPSON, Petitioner, against S. HOWARD COHEN and Others, Commissioners of Election for the City of New York, Constituting the Board of Elections of the City of New York, and HARRY GREENBERG, HAROLD BAER and M. MICHAEL EDELSTEIN, Respondents.*

In the Matter of the Application of HARRY GREENBERG and M. MICHAEL EDELSTEIN, Petitioners, against S. HOWARD COHEN and Others, Commissioners of Election for the City of New York, Constituting the Board of Elections of the City of New York, and KENNETH F. SIMPSON and LEONARD H. WACKER, Respondents.*

Supreme Court, Special Term, New York County, February 1, 1940.

* Affd., 258 App. Div. 1039.

*Gabriel L. Kaplan,* for Kenneth F. Simpson, petitioner, respondent.

*George G. Lake,* for M. Michael Edelstein, petitioner, respondent.

*William C. Chanler, Corporation Counsel* [*Russell Lord Tarbox* of counsel], for the respondents, constituting the board of elections of the city of New York.

*Eli Kriger,* for Harry Greenberg, petitioner, respondent, and Harold Baer, respondent.

*Hyman N. Glickstein,* for Leonard H. Wacker, respondent.

BERNSTEIN, J. These proceedings involve the validity of the certificate heretofore filed in the office of the board of elections on January 16, 1940, purporting to nominate one Reuben Guskin as the candidate of the American Labor Party for the office of Representative in Congress from the Fourteenth Congressional district of New York, in the special election to be held on February 6, 1940, and the validity of the substitution of M. Michael Edelstein as such candidate in the place and stead of said Guskin, who declined such nomination. One of these proceedings was instituted by Kenneth F. Simpson, chairman of the New York County Republican Committee, who theretofore had filed objections to the nomination. The other was instituted by Harry Greenberg, an enrolled member of the American Labor Party and claiming to be chairman of its New York County Committee, and by said M. Michael Edelstein, the substituted candidate. In the latter proceeding, one Leonard H. Wacker, member of the American Labor Party, who also had

filed objections to the certificate of nomination, was joined as a party. By stipulation both proceedings were tried together and much oral and written proof was adduced and made to apply to both of them.

The preliminary objection of those supporting the validity of the nomination that neither Simpson nor Wacker may be heard to attack the certificate is overruled. Simpson is an interested person by virtue of his position as the chairman of a committee defined in section 2 of the Election Law, and by virtue of his having filed objections pursuant to section 142 of the Election Law. Wacker is an interested person, not only because of his having filed objections as a member of the American Labor Party, but because he was actually brought into the proceeding by Greenberg and Edelstein.

The certificate of nomination purporting to nominate Guskin as the American Labor Party candidate recited that the nomination had been made by the executive committee of the New York County Committee of that party, pursuant to sections 131 and 139 of the Election Law and the rules and regulations of such county committee. No certified copy of the rule or resolution constituting the executive committee was attached to the certificate, but it is claimed that there was such a rule among the rules of the county committee which had been adopted on October 7, 1938, and filed with the board of elections on October 16, 1939. In any event, the failure to attach the rule to the certificate was not fatal to the validity of such certificate. (Cf. *Matter of Lauer* v. *Board of Elections*, 262 N. Y. 416.)

The nomination, however, is seriously attacked on three flanks. It is claimed, *first*, that there was no executive committee in existence at the time of the making of the nomination; *second*, that if there were such committee, it was not vested with the power of making such a nomination, and *third*, that, if there were such committee and it were vested with the power, it had failed to exercise it in accordance with law or the rights of its members.

Party nominations for an office to be filled at a special election are required to be made in the manner prescribed by the rules of the particular party. (Election Law, § 131, subd. 6.) In October, 1938, the New York County Committee of the American Labor Party adopted a set of rules which, amongst other things, provided for the election of a chairman, a treasurer, a secretary and an executive committee consisting of the three officers, one member from each Assembly district in which there is an affiliated American Labor Party club, to be elected by the county committee, and fifteen members at large to be elected by such executive committee with the approval of the State executive committee. (Art. II, § 7.)

Under those rules these officers and this executive committee were elected to serve until their successors were chosen. (Art. II, § 9.) The executive committee was given the power to act for the full county committee subject to its rules and approval and between meetings to administer the affairs of the party within the county and exercise all the powers and duties of the county committee. (Art. IV, § 1.) The members of the county committee which adopted those rules were elected at the party primary of September, 1938, to serve for one year, but it was expressly provided that beginning with 1939 the members of such committee were to be elected biennially in odd-numbered years. (Art. II, § 4.)

In September, 1939, members of a new county committee were elected and, on October 6, 1939, they met to organize pursuant to section 15 of the Election Law, but failed to do so. The reasons for this failure are fully set forth in the learned opinion of Mr. Justice WASSERVOGEL in *Matter of Connolly* v. *Cohen* (173 Misc. 288; affd., 258 App. Div. 944; Id. 945.) Under the order in that proceeding the members of that county committee are required to reconvene on February 29, 1940, to effect the organization that failed on October 6, 1939.

While the attempt to organize and elect officers and an executive comittttee on October 6, 1939, proved abortive, there is no doubt that both under the cited rules of the county committee and the general law the officers and executive committee of the county committee of 1938 continued and still continue to function as *de facto* officers, with the powers and duties prescribed by such rules, but with none others. As such, the executive committee could act for the full county committee, " but subject to its rules and approval."

Did those powers include that of making nominations for public office in special elections? Article VII of the county committee rules provides: " Section 1. Nominations for public office shall be made in accordance with the rules and regulations of the State Committee and in accordance with law. Section 2. The filling of vacancies in nominations for public office which occur after primary day and nominations for public office in special elections, shall be filled by a majority vote of the County Executive Committee."

A careful reading of those provisions, loosely drawn as they are, indicates that while section 1 deals with nominations generally, section 2 deals with the *filling of vacancies in nominations*. Two kinds of such vacancies are described, (a) those in nominations for office in general elections occurring between primary day and election day, and (b) those in nominations for office in special elections. That the latter part of section 2 refers to " vacancies in nomination " and not to " nominations " appears not only from the use of the

words " shall be filled," but also from the context and the punctuation. Nominations also are ordinarily made by a large group, with due deliberation; vacancies are filled by committees to meet an emergency. The rule clearly intended that the executive committee should be vested with the power of filling a vacancy, but not with the power of making a nomination for either general or special elections. Under that rule the executive committee had the right to substitute Edelstein for Guskin when the latter declined, but had not the right to nominate Guskin in the first instance.

There appears to be no specific provision in the State committee rules providing for methods of nomination in special elections, and it may be that such nominations can only be made by the members of the county committee, the source of all party authority. That was the view taken by the group represented by Wacker when it convened and voted to refrain from making a nomination for the office involved here. For the purposes of these proceedings it is, however, unnecessary to determine where the power was lodged. All that is necessary is to find that it was not lodged in the executive committee which undertook to make the nomination of Guskin.

The most compelling reason for holding the nomination ineffective is the method employed by the so-called Greenberg faction in purging the so-called Connolly faction from membership in the executive committee between October 6, 1939, the date of the organization meeting that failed, and January 15, 1940, the date of the nomination. The proof shows that on the earlier date there were forty-nine members who had been duly elected by affiliated clubs or accredited to this committee by certain trade unions, representing in all thirty-eight votes; that of these a goodly proportion were removed or disqualified between October sixth and October seventeenth for non-attendance at three meetings, called hurriedly and on short notice, by invoking an obsolete and wholly forgotten rule that absence from three consecutive meetings might be used as a ground for such removal or disqualification, and this too, in flagrant disregard of the fact that all of these members had been selected for membership on the committee by the duly elected members of the county committee or their affiliated clubs; that such removals were not based on proper charges or tried out before the proper grievance committee provided for by the rules of the executive committee; that all of these removed or disqualified members were promptly substituted by partisans of the Greenberg faction; that no notice of the meeting of January 15, 1940, at which the Guskin nomination was voted, was served on more than twenty of the members of the committee who were in the best of standing on October 5, 1939, who represented district organizations and were

active in the affairs of the party, and that consequently, none of them attended such meeting; and that only a total of seventeen of the thirty-eight votes of the committee was cast to effect such nomination at that meeting. Proof of all these acts, singly and in combination, leads to the inevitable conclusion that the authority exercised by this *de facto* executive committee from October 6; 1939, to January 15, 1940, was exercised in violation of its legal duty toward its party, and makes its nomination of Guskin ineffective. (*People ex rel. Loew* v. *Batchelor*, 22 N. Y. 128; *Matter of Akin*, 149 App. Div. 950; *Matter of Broat*, 6 Misc. 445.)

In conformity with those views the court is constrained to hold that the nominations made and the substitution thereunder are invalid and that the petitioner Simpson and the respondent Wacker are entitled to the relief prayed for by them. Order signed.