In the Matter of the Petition of NAN HART and Others, Petitioners, against JAMES C. SHERIDAN, Individually and as Chairman of the Executive Committee of the Democratic County Committee of the County of Queens, and Another, Respondents.

Supreme Court Special Term, Queens County, May 6, 1938.

*Sydney Rosenthal,* for the petitioners.

*C. Gordon Lamude,* for the respondents.

MAY, J.   On April 9, 1938, a meeting of the executive committee of the Democratic county committee of Queens county was duly convened and was presided over by the respondent James C. Sheridan, as chairman.   The respondent James E. Healy acted as secretary.   During the course of the meeting a resolution was introduced and seconded, pursuant to which it was sought, briefly stated, to deprive the respondent Sheridan of all his rights, powers and prerogatives as chairman of said committee and as leader of the Democratic Party in Queens county.   Upon the roll call on said resolution, the name of the petitioner Gertrude Fentzke was not called nor recorded, and the petitioner Naomi Nicholson was recorded as absent and not voting.   The result was recorded as follows: thirty votes in favor of the resolution, twenty-eight and one-half votes opposed to the resolution, one vacancy (to wit: Gertrude Fentzke) one-half absent (to wit: Naomi Nicholson).

Rule X, subd. 2, of the county committee rules provides that the rights, privileges, powers, and duties conferred upon the chairman of the executive committee " shall only be withdrawn upon the affirmative vote *of a majority of a total of sixty votes of said committee."*

It will be observed that pursuant to the latter rule the chairman of the executive committee may be effectively stripped of his authority only in the event that at least thirty and one-half votes of the committee have been cast for that purpose.

Petitioner Gertrude Fentzke was admittedly elected a member of the county committee on or about April 2, 1936.   Thereafter she was elected to membership on the executive committee with power to cast a full vote at meetings thereof.   She was present

upon the occasion in question. Her continued status as a member, however, was challenged upon the ground that during the year 1937 she had changed her place of residence from Queens county to Hamburg, Erie county, New York. The fact that she had thus moved to the latter place was not denied at the meeting, nor has it been contradicted upon this proceeding. Respondent Sheridan, as the presiding officer at the meeting, ruled that in consequence of petitioner Fentzke's removal from Queens county she had forfeited her status as a member of the committee and that therefore she was not entitled to cast a vote. The stenographer's transcript discloses that much disorder, lasting a considerable period, occurred following the ruling. Heated words, unfortunately, were spoken, the utterance of which no doubt has later been regretted. During the confusion many of the members demanded that the chairman permit an appeal from his ruling to the body itself. The chairman, however, refused to permit the same.

Petitioner Naomi Nicholson, a member of the committee entitled to cast a one-half vote, failed to appear at the meeting. When her name was called upon the roll call, another member of the committee (one William M. Blake) responded and presented a paper writing purporting to be a proxy conferring upon the said member an authority and power to vote in place of and to represent Naomi Nicholson at the meeting. The respondent Sheridan refused to recognize the efficacy of the so-called proxy for the purposes intended.

The petitioners urge herein that the said Gertrude Fentzke should have been permitted to vote on the above mentioned resolution, and that the proxy of Naomi Nicholson should have been recognized by the chairman as effective. A consideration of the stenographer's transcript of the events of the meeting, together with the papers submitted hereon, seem to justify petitioners' contention that if the Fentzke and Nicholson votes had been recorded, the resolution in question would have been carried by a total vote of thirty-one and one-half to twenty-eight and one-half. By virtue of the instant proceeding they seek an order compelling the recognition by the respondents of Gertrude Fentzke as a member of the committee, permission for her to vote at the meetings thereof, that her vote be counted and recorded; and further that the proxy of Naomi Nicholson be recognized and recorded; and substantially that the court declare that at the meeting in question the above mentioned resolution was passed, carried and enacted thereby divesting the respondent Sheridan of his rights, powers and privileges pursuant thereto.

Section 17 of the Election Law, in so far as here material, provides as follows: " Vacancies in state or county committees. 1. In

case of the death, declination, disqualification, *removal from district* or removal from office of a member of the state or county committee, or the failure to elect a member, as by reason of a tie vote, *the vacancy created thereby* shall be filled by the remaining members of the committee."

Pursuant to Rule VIII of the county committee rules of the instant organization, it is required as a qualifying prerequisite that a member of the executive committee be a member of the county committee. (See, also, *Theofel* v. *Butler*, 134 Misc. 259.)

It is my view that the plain intendment of section 17 is that membership in a state or county committee depends for its continuance upon residence in the specific district. The section enumerates certain contingencies, the occurrence of any of which " thereby " creates a vacancy. The creation of the vacancy is *ipso facto* co-incident with the happening of the enumerated event. Is it not significant that " removal from district " is included within the identical classification with " death," " declination," " disqualification " and " removal from office," the occurrence of which latter events, by their very nature, would unquestionably result in a vacancy? Moreover, it would obviously seem to be repugnant to the fundamental concept of our particular form of democratic government to permit, in the absence of a qualifying statute, a person to represent the people of a district of which he or she was no longer a resident. If the foregoing construction of the statute be not accepted in this particular case where petitioner changed her' domicile merely to Hamburg, New York, what would be the proper construction if in fact petitioner had moved to California, France, Australia or some other place beyond the confines of her district?

Petitioners, however, invoke a provision of section 13 of the Election Law which states that the members of a state or county committee " shall hold office until the election of their successors." The foregoing provision obviously must be read together with the language of section 17. Pursuant to section 13 a member holds office until the election of his successor unless, because of the occurrence of one of the events specified in section 17, the position itself has become vacant. For instance, the death of a member, one of the events set forth in section 17, results in a vacancy. Obviously, in such case, section 13 would have no application.

Complaint is made that respondent Sheridan did not permit an appeal to the membership body from his ruling with respect to petitioner Fentzke's status. No legal grievance may be urged in consequence of the denial thereof. No factual question was involved relating to petitioner Fentzke's residence. It was not denied that she had moved to Hamburg, N. Y. Even had an appeal

to the body been allowed, the vote taken thereupon would have been ineffectual, in any event, to render nugatory the provisions of section 17.

Petitioners direct attention to the fact that at a meeting of the executive committee held on January 10, 1938, respondent Sheridan allegedly recognized the continued status of Mrs. Fentzke as a member although he was at such time aware that she had theretofore changed her residence. In answer to the foregoing, respondents assert that, at the meeting of January 10th, Mrs. Fentzke's vote was challenged by certain members of the organization and that no definite ruling as to her status was made by respondent Sheridan. In any event Mrs. Fentzke's status is governed by section 17 and that status cannot be legally altered by any heretofore contrary acceptance by respondent Sheridan of her as a continuing member of the committee.

As pointed out heretofore the purported proxy of petitioner Naomi Nicholson was not recognized. There is, however, no provision in the rules of the Democratic county committee of Queens county for the casting of a vote by proxy. I think it is quite well settled that there is no common law right of voting by proxy in a corporation or a membership organization. That proxies could not be used at common law, in the absence of specific authorization, has found expression in *Harben* v. *Phillips* (L. R. 23 Ch. Div. 14). (See, also, *People* v. *Twaddell*, 18 Hun, 427.) In *Phillips* v. *Wickham* (1 Paige 590) it is said: " The only case in which it is allowable, at the common law, is by the peers of England, and that is said to be in virtue of a special permission of the king. And it is possible that it might be delegated in some cases by the by-laws of a corporation, where express authority was given to make such by-laws, regulating the manner of voting. I am not aware of any other case in which the right was ever claimed; and the express power which is generally given to the stockholders of monied and other private corporations, is opposed to the claims in this case, where there is no express or implied power contained in the act. I, therefore, think the decision of the inspectors correct, in rejecting the votes offered under the proxies."

Since petitioners cannot point to any provision of the Election Law or to a by-law conferring the right to vote by proxy, it follows that there is no basis upon which to compel the recording of Naomi Nicholson's vote. The decisions relied upon by petitioners (*Matter of Daniel*, 149 App. Div. 777; and *Matter of Clark*, 137 N. Y. Supp. 218) are readily distinguishable for in each the right to vote by proxy was conferred by a by-law of the particular organization.

The allegation that respondent Sheridan accepted as valid certain proxies which were presented at a meeting of the executive committee on January 10, 1938, even if true, does not constitute a basis upon which to sustain the efficacy of the proxy here discussed. The action of a particular member, even if he be the chairman of the body, cannot effectuate a new rule of conduct binding upon the organization itself.

Petitioners' final argument is that, assuming the fact that the votes of Mrs. Fentzke and Mrs. Nicholson were not entitled to be cast at the meeting, the resolution to oust respondent Sheridan was nevertheless carried by a majority vote. This argument is predicated upon the reasoning that if it be deemed that Mrs. Fentzke is no longer a member of the executive committee because of her removal to Hamburg, N. Y., then a vacancy exists and the entire committee as presently constituted therefore has only fifty-nine votes instead of its full strength of sixty votes. Consequently, (even excluding also the proxy half vote which was sought to be cast on behalf of Mrs. Nicholson) it is urged that the thirty votes thus remaining out of the total of fifty-nine, which votes were recorded in favor of the ouster, represent a majority vote of the committee as now constituted. It is thus said, " if the total vote of the committee has been reduced to fifty-nine votes, then it is only reasonable that all that is necessary is a majority of these fifty-nine votes. Here such a majority voted in the affirmative. The resolution was thus, in any case, properly passed." Petitioners apparently overlooked, however, the plain command of rule X, subdivision 2, of the committee rules to which I have heretofore alluded. That rule specifies that the powers conferred upon the chairman shall be withdrawn only in the event of an affirmative vote " of a majority of a total of *sixty* votes." The effect of that rule cannot be ignored, as here sought, merely because of the exigencies of the occasion.

I hold, therefore, that at the meeting in question the resolution to oust respondent Sheridan from his position was not carried and in consequence the motion is denied. The companion motion which seeks to strike out certain affirmative defenses is also denied upon the grounds set forth in the foregoing discussion.